**UNITED STATES, Appellant,**

v.

**Terence N. BRADFORD, 423 90 4957,
Electrician's Mate Third Class (E–4),
U.S. Navy, Appellee.**

**Misc. Dkt. No. 87–1130 M.**

U.S. Navy-Marine Corps Court of
Military Review.

4 June 1987.

LCDR J.J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

Capt MARK FOSTER, USMCR, Appellate Defense Counsel.

LT HOWARD B. GOODMAN, JAGC, USNR, Appellate Government Counsel.

GRANT, Judge:

The appellee, at a general court-martial, which convened on 5 March 1987, was charged with conspiracy to commit assault (Article 81), wrongful possession and use of alcoholic liquor on board a ship in contravention of a lawful general regulation (Article 92), breach of peace (Article 116), and separate offenses of intentional infliction of grievous bodily harm and unlawful striking (Article 128), in violation of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 916, 928. The trial judge dismissed the charges on grounds the appellee was denied a speedy trial under Rule for Courts-Martial (R.C.M.) 707(a).[1] The Government timely appealed under Article 62, UCMJ, 10 U.S.C. § 862, and the propriety of the trial judge's dismissal of charges is now before us for resolution.

I

The evidence of record reveals that Petty Officer Quinn was assaulted on board the USS KENNEDY, on 4 September 1986, and that the appellee was identified as a suspect. No restraint, however, was imposed upon the appellee, although he was questioned about the assault on 5 and 25 September. The appellee was granted liberty when the ship entered the port of Haifa, Israel, on 16 October. While ashore, two more sailors were assaulted by five or six persons, one of whom was suspected to be the appellee. The appellee was questioned on 16 October and on 17 October at which time he and the other suspects were required to surrender their identification cards and ordered by the executive officer, after consulting with the commanding officer, to remain aboard the ship as a liberty risk. The appellee was questioned again on 19 October, the day the ship departed Haifa. On 20 October, the appellee was identified as being implicated in both the Quinn and Haifa assaults. On 25 October,

---

1. R.C.M. 707(a) originally provided:

(a) *In general.* The accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier.

R.C.M. 304(a) provides:

(a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions of liberty, restriction in lieu of arrest, arrest, or confinement.

(1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or refrain from doing specific acts. Such conditions may be imposed in conjunction with other forms of restraint or separately.

(2) *Restriction in lieu of arrest.* Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits; a restricted person shall, unless otherwise directed, perform full military duties while restricted.

(3) *Arrest.* Arrest is the restraint of a person by oral or written order not imposed as punishment, directing the person to remain within specified limits; a person in the status of arrest may not be required to perform full military duties such as commanding or supervising personnel serving as guard, or bearing arms. The status of arrest automatically ends when the person is placed, by the authority who ordered the arrest or a superior authority, on duty inconsistent with the status of arrest, but this shall not prevent requiring the person arrested to do ordinary cleaning or policing, or to take part in routine training and duties.

(4) *Confinement.* Pretrial confinement is physical restraint, imposed by order of competent authority, depriving a person of freedom pending disposition of offenses....

R.C.M. 707(a), as amended by Executive Order No. 12550, dated 19 February 1986, published at 51 Fed.Reg. 6497, effective 1 March 1986, provides:

(a) *In general.* The accused shall be brought to trial within 120 days after the earlier of:

(1) Notice to the accused of preferral of charges under R.C.M. 308; or

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4).

while at sea and prior to arriving in the port of Trieste, Italy, the commanding officer classified the appellee a Class-D liberty risk, effective 26 October, under Ship's instruction CV67INST 1640, dated 5 September 85, as the result of which he was denied further port liberty. According to Lieutenant Commander Phillip D. Cave (LCDR), JAGC, U.S. Navy, Command Judge Advocate for the ship, there was no need to notify the appellee of his liberty risk classification until just before entering the port of Trieste on 27 October, as mustering under the program was not required at sea.

The instruction provides in pertinent part that liberty in a foreign port is not a right and may be withheld

> to protect the reputation of foreign relations of the United States, the Navy, or to comply with international legal hold agreements.

The instruction further provides for a liberty risk board, appointed by the executive officer, consisting of three officers and one chief petty officer "to review all recommendations for liberty risk classification." The purpose of the board was to recommend and categorize those who represent a liberty risk and to provide such information to the commanding officer via the executive officer. The procedures specified in the instruction pertaining to the liberty risk board were not complied with. However, it was equally clear that LCDR Cave and his assistant routinely served the function of the board in providing recommendations to the commanding officer via the executive officer.

As a result of being designated a liberty risk, the appellee was denied liberty from 17–19 October in the port of Haifa; from 27 October to 2 November in the port of Trieste; and from 6–9 November in the port of Naples, Italy. During the Trieste port call, the appellee was again interrogated on 29 October by command investigators. The appellee was formally charged on 21 November with the assault on Quinn and the Haifa assault. He was formally advised on 24 November of the charges and

placed in pretrial restriction pending trial. The original charges were subsequently withdrawn from a special court-martial and referred to an Article 32 investigation on 20 December. On 17 February 1987, the charges were referred to a general court-martial with the intent of convening the court on 19 February when the ship was scheduled to arrive again at Haifa. The ship, however, was diverted from Haifa for operational reasons, and on 20 February entered the port of Rota, Spain, for one day, after which it proceeded to Norfolk, Virginia. The Naval Legal Service Office, Naples, responding to the ship's request for a trial team en route to Norfolk, indicated the trial counsel was unavailable. In addition, the ship was advised of the trial judiciary's comment that the trial of the case en route to Norfolk would not be an effective utilization of limited judicial resources. On 3 March the ship arrived in Norfolk, Virginia. The trial commenced on 5 March 1987.

The trial judge specifically found that the initial placement and maintenance of the appellee in the liberty risk program were in accordance with the regulation and properly motivated. However, the trial judge determined that such conditions of liberty imposed upon the appellee became the functional equivalent of pretrial restriction, starting the speedy trial clock under R.C.M. 707(a), when the focus of the investigation shifted to the appellee as the prime suspect on 29 October. The trial judge reasoned that on 29 October the appellee's liberty risk status was

> no longer entirely actuated by a desire to avoid international difficulties or service discrediting conduct ashore, but was, as a matter of fact, at least in some measure, actuated by a desire to ensure his presence for trial.

## II

The liberty risk program is not, in theory, a condition of liberty under R.C.M. 304(a)(1), which invokes speedy trial considerations under R.C.M. 707(a), as amended, and was never intended as such even be-

fore the amendment to R.C.M. 707(a). *See United States v. Turk*, 22 M.J. 740, 742–743 (N.M.C.M.R.1986) *pet. granted*, 23 M.J. 156 (C.M.A.1986). On the other hand, a liberty risk program which in theory does not constitute the imposition of restraint for speedy trial purposes under R.C.M. 707(a), as amended to exclude conditions of liberty under R.C.M. 304(a)(1), may in its execution start the speedy trial clock under R.C.M. 707(a) where the program is not implemented for the purpose for which it was intended. Where the issue is raised, each case must be examined from the perspective of the purpose of the regulation setting forth the program, the nature of the restraint imposed, and whether the restraint imposed was intended to serve the purpose of the program.

We have examined the regulation setting forth the liberty risk program and conclude it serves an important purpose in international relations which is independent of the purpose underlying R.C.M. 707(a) and the timely disposition of charges in the criminal justice system, and qualifies as administrative restraint under R.C.M. 304(h) which may be imposed for "military purposes independent of military justice." In this regard, the commanding officer should not be required to elect between jeopardizing international relations or risking the penalties prescribed by R.C.M. 707(a) simply because the focus of the criminal investigation shifts to a person duly subject to the liberty risk program, where there is no evidence that the nature of the restraint or implementation of the liberty risk program was intended to deny the person the right to a timely disposition of charges under R.C.M. 707(a). To identify the focus of the investigation alone as the linchpin consideration without evidence that the focus of the command also shifted to punitive pretrial restraint, is arbitrary and serves neither the interest of international relations nor the criminal justice system.

■ In this case, the appellee was properly denied port liberty due to his assaultive behavior in the port of Haifa. We give no credence to the appellee's argument, on appeal, that the failure of the command to convene a liberty risk board, pursuant to the requirements of the regulation, was evidence that the appellee was actually held for trial rather than as a liberty risk. The credible and unrebutted evidence of record belies the appellee's argument, as the procedures utilized in imposing conditions of liberty on the appellee and the other persons involved in the Haifa assault were routinely applied across the board to all members of the ship's crew. Further, the trial judge entered findings approving of the initial placement and maintenance of the appellee in the program as a liberty risk. Clearly, it was not the failure of the command to comply with the strict letter of the regulation which prompted the trial judge to convert an otherwise legitimate exercise of authority under the regulation to the functional equivalent of pretrial restraint under R.C.M. 304(a)(2)–(4). It was solely the focus of the investigation which centered on the appellee on 29 October at a time when the appellee was duly subject to the liberty risk program.

■ We hold that persons subject to the regulation may be placed and maintained in the liberty risk program who are or may become primary suspects in a criminal investigation without necessarily raising speedy trial considerations under R.C.M. 707(a), where the program, as in the present case, is designed to further international relations and the reputation of the United States and its Armed Forces and the implementation of the program is not a subterfuge for imposing pretrial restraint under R.C.M. 304(a)(2)–(4). The motivation of the command and implementation of the program were proper before 29 October according to the findings of the trial judge and the evidence of record, and there is no other evidence that such conditions were any different on and subsequent to 29 October, at least until 24 November at which time the appellee was formally notified of charges and placed in pretrial restraint

within the meaning of R.C.M. 304(a)(2). On the contrary, the testimony of LCDR Cave revealed the focus of the criminal investigation on 29 October had nothing to do with subjecting the appellee to pretrial restraint under R.C.M. 304(a)(2). He stated that after the appellee was notified on 25 October that his liberty was revoked for the port call at Trieste, from 27 October—2 November, his file was reviewed once again before entering the port of Naples and subsequent to the 29 October shift in focus of the criminal investigation, at which time it was again determined that the appellee was still a Class-D liberty risk. Accordingly, his liberty was denied during the Naples port call from 6–9 November. Furthermore, LCDR Cave stated that it was only on 24 November at a time when the command believed it had a good case against the appellee and considered him a "runner" that the decision was made to change his administrative status as a liberty risk to one of pretrial restraint pending judicial proceedings. The evidence of good faith on the part of the command cannot be arbitrarily ignored solely because the investigation focused on the appellee as the prime suspect.

■ Under our rationale, the speedy trial clock did not start until 24 November 1986 at which time the appellee was notified of the charges and placed in punitive pretrial restriction. The Government's accountability for speedy trial purposes is within the 120 days prescribed under R.C.M. 707(a), given the commencement of the trial proceedings on 5 March 1987.

Accordingly, we reverse the decision of the trial judge as entirely unsupported in fact and erroneous as a matter of law. *United States v. Burris*, 21 M.J. 140 (C.M. A.1985). The case is remanded to the military judge for further proceedings not inconsistent with this decision.

Chief Judge GORMLEY and Judge RILEY concur.